Filed 10/6/21  Castanon v. Long Beach Lesbian and Gay Pride CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALEXA CASTANON, | B303662 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18LBCP00073) |
| v. | |
| LONG BEACH LESBIAN AND GAY PRIDE, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Affirmed.

Leslie R. Smith for Plaintiff and Appellant.

Krieger & Krieger, Lawrence R Cagney, Linda Guthmann Krieger and Terrence B. Krieger for Defendants and Respondents.

————————————

Appellant Alexa Castanon was voted out of membership in and thus off the board of directors of Long Beach Lesbian & Gay Pride, Inc. (LBLGP) in its August 2018 election. Shortly thereafter, she filed this action for fraud against LBLGP, its president, Dorothea Newman, and a vice-president, LaRhonda Slaughter (respondents). The fraud action sought Newman's and Slaughter's removal from the board of directors and appellant's own reinstatement. While the fraud action was pending, appellant filed a petition for writ of mandate seeking, among other things, to stay LBLGP's annual August 2019 elections. With the stipulation of the parties in the writ proceedings, the court supervised a new election, in which appellant was again voted out of LBLGP. Then, in this action, the trial court granted respondents' motion for judgment on the pleadings on the second cause of action to reinstate appellant, finding it moot after the court-supervised elections. After losing a series of discovery disputes, appellant dismissed her first and only remaining cause of action with prejudice. This appeal, which concerns appellant's membership only, followed.

Appellant contends the trial court erred in granting judgment on the pleadings, in denying her motion to quash a subpoena by which respondents sought the identity of the owner of the website "LongBeachGayPride.org," and in compelling her to respond substantively to Requests for Admission (RFAs), which she contends invade her right to privacy. We affirm the judgment of dismissal.

## BACKGROUND

Appellant filed her complaint in this matter on December 5, 2018. The complaint contains two causes of action. The first is entitled "Removal of Directors for Fraud, Malfeasance and Gross Misconduct [Cal. Corp. Code §5223]," the second "Declaration of Member's Rights [Cal. Corp. Code §5617]."[1] A key claim of the complaint was that LBLGP's August 18, 2018 election was rigged by Newman and Slaughter to remove appellant from membership. The details of the election rigging were set forth in the general allegations. The first cause of action alleged 14 wrongful acts by Newman and Slaughter, including two broad allegations about the conduct of elections. In the second cause of action, appellant alleged: "As a consequence of defendants' wrongful actions, Plaintiff has been denied the right to participate at or vote in any meetings, including board of director's meetings."

Immediately after appellant filed this action, LBLGP restored her to a voting seat on the board of directors.

On February 20, 2019, appellant filed a petition for writ of mandate (LASC case No. 19STCV05359). Initially, appellant complained in the petition of improprieties by LBLGP's leaders, particularly denying appellant's requests to review and copy LBLGP's financial records. The petition named LBLGP's treasurer as respondent. The Superior Court deemed the cases related and assigned both cases to the same judge.

---

[1] Further unspecified statutory references are to the Corporations Code.

3

While the writ proceedings were pending, respondents undertook discovery in the fraud action. They served a subpoena on GoDaddy.com to discover the identity of the owner of the LongBeachGayPride.org website, which had a confusingly similar name to LBLGP's website LongBeachGayPride.org and which contained statements respondents asserted were defamatory. Respondents also contended identification of the owner was necessary to prove their affirmative defense of unclean hands. Appellant brought a motion to quash the subpoena. The trial court limited the subpoena to require GoDaddy.com to respond only if the owner of the website were appellant or her attorney; it otherwise denied the motion. The owner was found to be appellant's attorney. Appellant has not provided this court with a reporter's transcript of the hearing on the motion to quash.

On August 7, 2019, the trial court held a lengthy hearing on the writ petition, which included testimony by Slaughter and Wayne Manous. Appellant had previously sought a stay of LBLGP's annual election in her writ petition, but during this hearing, appellant agreed to LBLGP's proposal to hold the organization's August 2019 election under court supervision. Appellant has not provided this court with a reporter's transcript of the hearing.

A court-supervised election was held pursuant to the stipulation of the parties. On August 15, 2019, the court presided at a hearing to count the votes cast the previous day. Among other results, LBLGP members voted 12 to 8 against renewing appellant's membership, which rendered her ineligible to sit on the board of directors. Appellant has not provided this court with a reporter's transcript of the proceedings.

On October 23, 2019, the court denied appellant's writ petition in its entirety. Appellant appealed. The court's denial was affirmed by on November 2, 2020 in case No. B303237.[2]

On December 5, 2019, the trial court held a hearing on respondents' motion for judgment on the pleadings on the second cause of action that prayed for relief as to appellant's personal membership. The court granted the motion, finding the cause of action moot in light of the court-supervised election. The trial court granted respondents' motions to compel substantive responses to certain form interrogatories and RFAs. The court also imposed sanctions against appellant and her counsel in the amount of $1,500 per motion. Appellant has not provided this court with a reporter's transcript of the hearing.

On December 30, 2019, appellant filed a request to dismiss with prejudice her first case of action to remove Newman and Slaughter as directors. This was appellant's only remaining cause of action. On January 3, 2020, the trial court signed and entered a judgment of dismissal in favor or respondents and found them to be the prevailing parties entitled to recover costs. This appeal followed.

---

[2] We deny respondents' request that we take judicial notice of the prior appeal. Judicial notice is unnecessary to the resolution of this appeal.

## DISCUSSION

A.     *The Trial Court Did Not Err in Granting Judgment on the Pleadings on the Ground of Mootness.*

The trial court granted judgment on the pleadings as to appellant's second cause of action on the ground that it was moot. Appellant contends the trial court erred in finding the second cause of action moot because that cause of action challenged the validity of the entire 2018 election and so was not rendered moot by changes to her individual membership status. She contends, in the alternative, that the trial court abused its discretion in failing to permit her to amend her complaint.

The standard of review of a motion for judgment on the pleadings is the same as that for a general demurrer. (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1298.) Thus, we review an order granting judgment on the pleadings de novo. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) We treat as true " 'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Generally, when judgment on the pleadings is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

6

Moot cases are " '[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*).)[3] "Regardless of the nature of the intervening events that lead to a finding of mootness, a common denominator in mootness cases is that the court expressly or impliedly concludes there is no longer an existing controversy before it upon which effectual relief may be granted." (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1223.) Simply put, "[a] case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief." (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1503.) Since mootness does not arise from a pleading defect in the complaint but from external events, it would be an unusual case in which mootness could be cured by amendment. Thus, when events render a case moot, courts should generally dismiss it. (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722.)

Construed liberally, nothing in the complaint in any way indicates appellant is challenging the validity of the entire 2018 election. In her general allegations, appellant does allege broadly that Newman and Slaughter attempted to have "select members removed from the organization by setting up an elaborate scheme to fix the organization's recent annual election." She further

---

[3] "California courts will decide only justiciable controversies. [Citations.] The concept of justiciability is a tenet of common law jurisprudence and embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy.' " (*Wilson, supra,* 191 Cal.App.4th at p. 1573.)

alleges they disbanded the election committee so that they "could control the election process and achieve any outcome they desired." However, the only desired outcome alleged by appellant was removing *appellant* from membership: Newman and Slaughter planned and agreed to "to fix the outcome of the election by having Plaintiff voted out." They "gave instructions to the vote counters to take all necessary measures to ensure that the tally of votes in favor of Plaintiff did not reflect more than 50% of the votes cast." Moreover, this is the only outcome allegedly achieved by the election fraud. Appellant alleges that after the election, she "was told she was not voted back into the organization or onto the board. Plaintiff was the *only* member who was not voted back." (Italics added.)

The second cause of action itself is entitled "Declaration of Member's Rights." The word "member's" is singular, indicating it seeks the declaration of the rights of one member, appellant. The only new allegation in the cause of action is: "As a consequence of defendants' wrongful actions, Plaintiff has been denied the right to participate at or vote in any meetings, including board of director's meetings." Nothing in this allegation suggests that appellant is seeking to invalidate the entire 2018 election or to obtain a declaration of the rights of other members.

In her prayer for relief, appellant asks the court to declare "null and void the attempts to remove Plaintiff as a member and/or as a director in the August 8, 2018 election" and that "Plaintiff is a member in good standing of defendant corporation and thus entitled to vote at any board of director's meeting" and to enjoin certain actions by the board until her position and

8

voting rights are restored.  She sought no other relief related to the 2018 election.[4]

We see no error in the trial court's determination that the second cause of action was moot.  Almost immediately after appellant filed this lawsuit, respondents restored her membership and director voting rights, pending resolution of the action.  Then, in the related writ proceedings, the trial court granted appellant a statutorily approved remedy for her claim that she was wrongfully rejected from membership by the rigged 2018 election:  a court-supervised election in which members voted on whether her membership should be renewed.  (§ 5617, subd. (d).)[5]  Appellant stipulated to this procedure.  She lost her membership in the court-supervised election, and with it any eligibility to act as a director.  These events left the court with no effective relief to grant as to the second cause of action.

---

[4]    The only other remedy sought by appellant in her prayer for relief was removal of Newman and Slaughter from office and a bar to their reelection, but this relief is unmistakably part of her First Cause of Action, entitled "Removal of Directors for Fraud, Malfeasance and Gross Misconduct."  There is no allegation that Newman and Slaughter rigged the 2018 to obtain their own seats as directors.

[5]    Subdivision (d) of section 5617 provides: "The court, consistent with the provisions of this part and in conformity with the articles and bylaws to the extent feasible, may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, may determine the validity of the issuance of memberships and the right of persons to vote and may direct such other relief as may be just and proper."

Appellant contends that the trial court was statutorily required to set a hearing on the validity of the 2018 election before deciding any other matter, and the court's failure to do so resulted in prejudicial error, specifically the mootness of her second cause of action.

Section 5617, subdivision (c) provides: "Upon the filing of the complaint, and before any further proceedings are had, the court shall enter an order fixing a date for the hearing, which shall be within five days unless for good cause shown a later date is fixed." The record on appeal is silent as to whether good cause for a later date was shown, and we do not presume error on the part of the trial court. (*Foust v. San Jose Construction Co. Inc.* (2011) 198 Cal.App.4th 181, 187.) Even assuming the trial court delayed such a hearing without good cause, appellant was not prejudiced by the delay. She received membership and director voting rights pending resolution of her claim of wrongful rejection from membership. The court-supervised 2019 election was a proceeding in the writ action, not this case. More importantly, appellant stipulated to the court-supervised election with full knowledge of the status of proceedings in this case. She cannot now complain about the election's timing.

Appellant also contends the trial court "recognized" at the August 7, 2019 writ hearing that she could proceed with this action challenging the validity of the 2018 election regardless of the results in the court-supervised 2019 elections in the writ proceedings. ~(AOB 28-29)~ Appellant raised this claim in her opposition to the motion for judgment on the pleadings in this action so the trial court was aware of her claim. Appellant has not provided a copy of the reporter's transcript of the August 7, 2019 hearing nor has she provided a copy of the reporter's

10

transcript of the hearing on the motion for judgment on the pleadings. It is appellant's burden to provide a reporter's transcript or an agreed or settled statement if one is necessary for appellate review. (*Foust v. San Jose Construction Co. Inc.*, *supra*, 198 Cal.App.4th at p. 186.) A judgment or order of the trial court is presumed correct, and if appellant does not provide a record which is adequate for appellate review, the decision of the trial court will ordinarily be affirmed. (*Id.* at p. 187.)

There is no basis to depart from that rule here. Although the record is clear that appellant stipulated to the court-supervised election proceedings, there is no written confirmation of the details of the stipulation or of any representations by the trial court. In addition, the record shows the court granted the motion for judgment on the pleadings with an awareness of appellant's claim. This indicates to us that the court did not agree with appellant's recollection of what occurred at the August 7, 2019 writ hearing.

Appellant contends that even if the court did not "recognize" that she could proceed nonetheless with her second cause of action, the 2019 election could not resolve her claim that the rigging of the 2018 election deprived her of a three-year term as a *director*. We disagree. Appellant stipulated to having her membership status determined by the 2019 election and by so stipulating she necessarily agreed that this election would decide whether she continued as a member *and* director. Put differently, only members can serve as directors, and so by deciding her membership, the 2019 election also determined her eligibility to serve as a director.

11

Finally, appellant contends that in opposition to the motion, she "repeatedly requested the court to grant [her] leave to amend if it deemed any allegation to be insufficiently pled."[6] Appellant's problem is not that her requests for relief were unclear or her facts insufficiently pled. Her requests for relief are crystal clear and her claims of election fraud are very specifically pled. Her problem is that she specifically alleged that the purpose of the 2018 election rigging was to get rid of *her* and that she was the *only* person who was removed from membership as a result of that election. The only election-related relief she sought related to *herself*. The only directors she sought to remove were Newman and Slaughter, and that relief was part of the First Cause of Action only. It is this clarity and specificity which resulted in the second cause of action becoming moot.

B.  *The Court's Ruling Denying the Motion to Quash the GoDaddy.com Subpoena Is Moot.*

The owner of the website LongBeachGayPride.org took steps to conceal her identity. Accordingly, respondents served a

---

[6] On pages 3 and 4 of her opposition brief, appellant stated generically that if the court found the facts in the complaint to be "insufficiently alleged" or the nature of the relief sought "unclear," she "requests leave of court to amend the complaint to cure any deficiencies." On appeal, appellant provides two additional record cites she claims show requests for leave to amend, but the lines cited do not show such requests. She has not provided any record cites showing she proffered specific facts in the trial court in connection with her request to amend. Even if leave to amend could be appropriate in moot cases, appellant did not meet her burden of showing a reasonable possibility that the defect could be cured. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

12

subpoena on GoDaddy.com to discover the owner's identity. Respondents asserted the information was needed for their affirmative defense of unclean hands. Appellant contends the trial court erred in denying her motion to quash this subpoena.

Appellant's inaction after her motion was denied resulted in the revelation that the owner was her own attorney. Her inaction rendered this claim moot. As respondents point out, appellant did not seek a stay or writ review of the court's ruling and so GoDaddy.com provided the name of the owner to respondents. The identity of the owner is no longer private. It is not possible to undo the unmasking. (See *Simi Corp. v. Garamendi, supra,* 109 Cal.App.4th at p. 1503 [mootness occurs "when a court ruling can have no practical impact or cannot provide the parties with effective relief"].)

Appellant contends that if this court finds error, the matter could be remanded and the trial court could issue a protective order requiring respondents and their attorneys to destroy the "private information they received, seal the court files that might include that information" and "prohibit the use or disclosure of any information disclosed by GoDaddy.com" unless respondents filed a direct action against the owner.

Appellant could have sought limitations on the disclosure and use of the information to protect the owner's privacy even if the trial court had correctly denied her motion.[7] Appellant has

---

[7] Appellant has not identified what private information GoDaddy.com might have provided apart from the identity of the owner, but a protective order limiting the use of any such information would have provided protection equivalent to its destruction. Similarly, a protective order could have limited the use of any private information to this case or to a separate direct action.

not provided any record citations showing she made such efforts. Further, this court's internal records do not show any efforts by appellant to protect the identity of the owner during this appeal. As a result, the information is no longer private. A protective order would have no practical impact at this point.

Appellant urges us to exercise our discretion to decide this claim even though it is moot because it involves issues of public interest and questions of law. We decline to do so.

The right to speak anonymously is well established in case law, and it is recognized in the context of speech on the internet, as appellant's multiple case citations show. (See, e.g. *Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154.) This right to anonymity is not absolute and a speaker's identity may be ordered disclosed if his or her statements are actionable. (See, e.g., *Glassdoor, Inc. v. Superior Court* (2017) 9 Cal.App.5th 623, 635.) The actionable nature of a statement is fact-dependent, which will vary from case to case, and so the issue cannot be decided as a matter of law. Although not determinative, an additional reason not to decide the issue is the state of the record on appeal. It does not appear to contain all documents relevant to the motion to quash, and appellant has not provided a reporter's transcript of the hearing on the motion to quash.

The requirement of notice to the anonymous speaker before disclosure of his or her identity is also well established in law. Further, the trial court in this case recognized the need for notice and limited the subpoena to require disclosure only if the owner/speaker were appellant or her attorney, who indisputably had notice of the subpoena. There is no need to decide any issue of notice.

14

C.    *The Trial Court's Order Compelling Responses to Certain RFAs Has No Further Force and Effect and the Record Is Not Adequate for Review of the Sanctions Order.*

Appellant contends the trial court violated her First Amendment rights and those of non-parties when it granted respondents' motion to compel responses to RFAs 52 through 77. She also contends the trial court abused its discretion in granting the motion because the RFAs sought irrelevant information.

Appellant has expressly stated she has not appealed the first cause of action, which she voluntarily dismissed. Appellant dismissed the first cause of action without responding to the RFAs. We have found no error in the trial court's dismissal of her second cause of action. Accordingly, the trial court's order compelling appellant to respond to the RFAs has no force or effect. There is no more case.

The trial court did order appellant to pay sanctions in connection with the motion to compel responses to the RFAs, but the record is inadequate to review this ruling. Even assuming the trial court abused its discretion in compelling responses to RFAs 52 through 77, the trial court's order addressed more than RFAs 52 through 57: it compelled appellant to respond to other RFAs as well as to interrogatories. And in sanctioning appellant, the court imposed an amount less than that sought by respondents.

Without the reporter's transcript, which appellant has not provided, the record is inadequate to permit appellate review. We have no way to determine the court's reason for imposing sanctions, or even whether the sanctions were based only on appellant's failure to respond to the challenged RFAs, as opposed to the other RFAs and interrogatories which she does not

15

challenge on appeal.  Accordingly, we uphold the trial court's order.

## DISPOSITION

The judgment is affirmed.  Respondents to recover costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:



GRIMES, Acting P. J.



WILEY, J.